Nash, J.
 

 B-y arresting the judgment, we understand that the proceedings were dismissed, and the defendant discharged.
 

 All the laws existing in this State, previous to 1836, upon the subject of offences committed by slaves, were, at the session of the Legislature, held in that year, thrown into one Act, and re-enacted,
 
 Rev. St. ch.
 
 111. By that Act, such offences were divided into three classes, and the cognizance of them committed to three separate and distinct tribunals. Those which
 
 lt
 
 were of such a trivial nature, as not to deserve a greater punishment” than whipping, were, by the 41st sec. trusted to a single magistrate ; while by the 42d sec. such as were of a higher degree, were committed to the “ original and exclusive jurisdiction of the Courts of Pleas-and Quarter Sessions except in cases, in which the punishment might extend to life, and those within the benefit of clergy. These latter by the 43d sec. are committed to the original and exclusive jurisdiction of tho Superior Courts. The policy of the law in this distribution of power is very obvious. The offenses entrusted to a Justice of the Peace were of
 
 *50
 
 a nature deemed by the law too trivial to need the attention and occupy the time ©£ a Court of record, and required speedy and cheap action. They were committed by a portion of our population, mingling in all our domestic relations, and whose conduct required- a constant supervision, to keep them in a proper state of subordination-.. The Courts of record met only at stated periods, and at designated points, while the Justices being spread over their respective counties, were prepared to act at any time, were accessible at all times, and in their action were bound to the observance of few forms. As the of-fences rose in magnitude, they required, in the infliction of punishment, increased care and form in the prosecution. The power, however, was not only divided, but each tribunal- under the Act of ’36, exercised it without control by appeal; the jurisdiction of each on this subject was original and exclusive. That this-was the intention of the Legislature, is manifest from the language-used, from the silence of the Act as to any appeal, and from the fact, that no appeal from either to the Court above was, as far as we are apprised, ever attempted until the year 1842. In that year, the previous policy was departed from, and the Legislature, by an. Act, ch 4, authorised an appeal by the master of a slave, convicted by a single Justice of the Peace, to the County Court. The question presented to us, is, has the master of the slave Marley, a right to appeal, from the County to the Superior Court. We think he has not.. The object of the Legislature, in the enactment of 1836, is so evident, and its policy so consistent with the peace and safety of the community, that we feel-no disposition.to extend the Act of 1842 further than its words authorise us; because we believe that it was not the intention of the Legislature so to extend it. By the words of that Act, the appeal granted is to the County Court, and nothing is said of any other or further appeal. The jurisdiction of the County Court,, in these matters, under the Act of 1836, is
 
 *51
 

 original
 
 and
 
 exclusive,
 
 and when, by the Act of 1842, they acquired an appellate jurisdiction, the latter must be exercised fey them to the same extent as the former. Unless it is otherwise ordered in the law, it must be exclusive, in the sense of being final; and for the plain ■reason, that the Legislature, in increasing their jurisdiction, has not altered the exclusive nature of it. If it were not so, this singular anomaly would be presented, that slaves brought before them for the higher offences, would have no right to ask the judgment of a higher tribunal, while the perpetrators of those of the lowest and most trivial character, would be so entitled.
 

 We are of opinion, that, under the Act of 1842, the master of the defendant had no right to appeal from the County to the Superior Court, and that the presiding Judge ought to have dismissed the appeal, as improvidently granted, and remanded the case to the County Court, and bound over the defendant for his appearance there, so as to subject him to the sentence of the County Court.
 

 It will be understood, that this opinion is confined to an appeal from the County Court, by the owner of a slave, as a matter of right; and it is not meant to interfere with the general doctrine, that the proceedings of all inferior tribunals may, upon a proper case, be re-examined in the Superior Courts upon certiorari, or on writ of error.
 

 Per Curiam. This opinion will be certified to the Superior Court of Law of New Hanover County.